(No. 3981—

HARMON ODLE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1947,*

WILLIAM J. LAWLER, for claimant.

GEORGE F. BARRETT, Attorney General; and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

DAMRON, J.

This claim is brought under Section 3 of the Workmen's Occupational Diseases Act by the above named claimant, for damages sustained as a result of contracting tuberculosis during the course of his employment by the above named respondent.

The evidence discloses that he was employed by the Kankakee State Hospital, Kankakee, Illinois, as a barber, on or about the 20th day of January 1925 and remained in the employment of the respondent until the 5th day of August 1945.

During the course of his employment, he was required to go to a ward in said institution, on occasion, where approximately 100 patients, suffering from tuberculosis in various stages were confined in their beds, and shave them. He was furnished an assistant who was a patient.

The testimony shows there was no running water in this ward and in order to shave these patients, a pail of water, one mug and one brush was furnished them. The assistant would dip the brush in the pail of water, make the lather in the mug, lather the patient and claimant would then shave him. After one patient was shaved, the assistant would again dip the brush in the pail of water then into the mug, more lather was made and applied to the next patient and this procedure was followed from patient to patient until approximately 100 had been shaved. The water was never changed, the mug was never cleaned nor the brush or razor sterilized from patient to patient.

The evidence further discloses that the claimant complained to the officials of the Kankakee State Hospital on many occasions and requested that sanitary precautions be adopted and that he be furnished equipment to

properly sterilize his instruments and appliances used by him. No precautions of any kind were directed to be taken by the authorities of said hospital nor were any taken to avoid contracting tuberculosis by claimant, while engaged in shaving these bedfast tubercular patients.

On August 5, 1945, X-rays were made of the chest of this claimant which disclosed that he was suffering from tuberculosis. He was admitted as a tubercular patient at the Livingston County Sanatorium, Pontiac, Illinois, where he is now confined. He has not been able to do any type of work since his admission to the sanitorium.

In this record, and admitted in evidence, are two letters from Dr. O. L. Bettag, Medical Director and Superintendent of the Livingston County Sanatorium. The letters being dated January 3, 1947 in part state:

"There was x-ray evidence of lung disease which, on bacteriological sputum examination, was confirmed as being caused by the tubercle bacillus. This organism was found on at least seven examinations. The last sputum found positive for tubercle bacilli was August 14, 1946. Examinations since then have been negative for this bacteria. Mr. Odle's weight increased from 145½ pounds to 205 pounds. The highest recorded weight was in May 1946. The weight at the present time is 183½ pounds.

He has been treated on bed rest, collapse of the left lung by artificial pneumothorax, and graduated up-privileges under observation. There has been definite improvement in the lung pathology. At the present time, based upon the nomenclature of the National Tuberculosis Association, his moderately advanced pulmonary tuberculosis is considered apparently arrested.

Mr. Odle's past history is free of close contact with open cases of tuberculosis except during the over twenty years of employment in the Kankakee State Hospital. No entrance x-ray examination of the chest was made in the employment of Mr. Odle. It is, therefore, reasonable to assume that he entered the State service in a condition free of active pulmonary tuberculosis, since he worked a good number of years before symptoms of the disease appeared. Assuming the Illinois Department of Registration and Education rules regarding sanitary conditions for barbers and the public were not carried out, it is medically sound to think this may have contributed toward his contracting pulmonary tuberculosis. Of greater importance, however, in my opinion,

is the fact that Mr. Odle is reported to have worked repeatedly among tuberculous patients, and these unfortunates, because of their mental disease, are often unable to consciously control their methods of coughing. It is reasonable to deduct in consequence that there must have been considerable coughing directly into the face of Mr. Odle during his many years of service. This is one of the surest ways of infecting another. Under the circumstances, it is difficult to assume a better setting for the contraction of active pulmonary tuberculosis by an employee.

Mr. Odle not only worked on the State Hospital property, but lived there most of the time of his employment. He was married approximately ten years ago and, during the first fifty percent of this time, lived with his wife on the State grounds. The remainder of the time, he lived with his wife in the city of Kankakee. Mrs. Odle however, has been examined by repeated chest x-ray study and has been found free of infectious pulmonary tuberculosis. She, therefore, could be eliminated as a source of pulmonary contagion in regard to Mr. Odle's present disease.

At the present time, Mr. Odle's right lung is partially collapsed by artificial pneumothorax. The question as to his prognosis is again a difficult one. Presumably, he will become well enough to reengage in gainful occupation. Provided there are no relapses, Mr. Odle should progress very satisfactorily. Any patient, however, having had active pulmonary tuberculosis is a potential candidate for re-activation of this disease."

It is well recognized by health authorities that barber shops or any other place where barber service is rendered is a source of spreading disease unless operated and kept in a sanitary condition at all times. And, in order to protect the public, the Legislature passed an act concerning the operation of barber shops (Chap. 16¾ Sec. 19, Ill. Rev. Stat. 1937). It provides that the Department of Registration and Education shall be empowered to promulgate rules and regulations which shall have the force and effect of law. Pursuant to the authority granted the Department in said Act, rules were adopted and approved March 19, 1942. Among these rules are the following: Rule 7 which provides, "All barber shops or any other place where barber service is rendered, . . . . shall be required . . . . to supply hot and cold running water, in the room where barber service is rendered." Rule 13

which provides, ".... all razors, shears, clippers, applicators, cups, or other instruments or appliances after being used on any patron, shall be thoroughly sterilized immediately either by boiling for three minutes in water or kept for five minutes in a solution of one of the following, namely: 50% alcohol, 5% carbolic acid, 20% formaldehyde, or other established germicidal solution...."

The Health and Safety Act, (Ill. Rev. Stat. 1945, Chap. 48, Par. 137.3) makes it the duty of every employer to provide reasonable protection for the lives, health, and safety of all persons employed, to effectuate its purpose. In *Wheeler* vs. *State* 12 C.C.R. 254, we held that the State of Illinois may properly be made respondent in the Court of Claims, in any action for damages for injury to health, resulting from a disease contracted by a state employee in the course of his employment, and proximately caused by the State's negligence, under the terms and provisions of the Workmen's Occupational Diseases Act. The State not having elected to provide and pay compensation under Section 4 of the Workmen's Occupational Diseases Act, the employee has a right of action, under Section 3 of the Act. That section provides that violation by an employer of any statute of this State, intended for the protection of the health of employees, shall constitute negligence of the employer within the meaning of the section.

The rules adopted by the Department were intended to promote the health of claimant and to prevent the spreading of contagious or infectious disease, including open tuberculosis, and should have been followed by the officials in charge of the institution. Not only for the benefit of its employees such as claimant, but for the unfortunate inmates in the ward.

It cannot be denied that the sanitary rules adopted

by the department, if followed, would lessen the exposure to claimant. That the method used by claimant in shaving the tubercular patients was unhealthy and exposed him to extra hazards which finally undermined his health. The razor used by him, the brush, mug, and water must have been germ laden after a few patients had been served, and claimant came into contact with all the above articles in shaving the patients.

Respondent having violated the rules of the Department of Registration and Education and the terms of the Health and Safety Act, which are intended for the protection of the health of employees, such as claimant, constitutes negligence under Section 3 of the Workmen's Occupational Diseases Act and therefore justifies an award for damages.

While the claimant was employed, he received a salary of $2,400.00 per year. He is now suffering from active, moderately advanced, pulmonary tuberculosis with cavitation. He seems to be improving but he will have to remain at the Sanatorium until his tuberculous condition becomes arrested. The length of time required is uncertain. The Court is of the opinion that claimant is entitled to damages under Section 3 of the Workmen's Occupational Diseases Act in the sum of Twenty-five hundred ($2,500.00) Dollars.

An award is therefore entered accordingly.